I believe that my reply brief has summarized the issues, the decisive points, in a way that I cannot effectively improve upon in the first three pages of the reply brief is the whole case. So that's my view. I can certainly summarize the reply brief, which would really be a recitation of it. With that said, I would— Let me go ahead and get started then, because it seems to me the thrust of your position is that this is a State Supreme Court's decision, and Sheen involves a factually different situation. But I'm not sure that speaks to distinguish the logic of Sheen, which, as I understand, it was based upon both the economic loss rule, which is you don't get a tort recovery for purely economic losses, which is what your client is claiming, and second, that when there's a contract, the duties imposed are the duties imposed by the contract, not created elsewhere. And there's no duty that defendants allege to a breach that's set forth in the contract. So if that's the logic of Sheen, why doesn't that logic apply to your case? Because the logic of Sheen itself, Sheen itself, makes clear there are still an area of conduct in situations like this by mortgage servicers that would not be ruled out as a matter of truth. How does that make it so—I mean, point to what in Sheen you think makes your case viable. What makes it viable is that Sheen itself said the economic loss rule, the idea that when you make a contract, there's certain things that are possible events, such as negligent carrying out of the contract, that are subsumed within the bargain. But— So you're going to have a claim for negligent misrepresentation, but the focus of Sheen was on a claim for negligence. That's correct. And that's the only claim you have left. The only claim we have left is negligence, but we still get to make it if in the course of carrying out the contract there was intentional misconduct. Because what Sheen says is these so-called exceptions based on conduct, such as that would lead to a claim for fraud, promissory estoppel, intentional misrepresentation, negligent misrepresentation, all of those are exceptions. Those claims are not barred by the economic loss rule. And we say the intentional misconduct here, lying about the appraisal, both the getting of the new one and the fact that they had a series of existing ones, all showing several million dollars' worth of equity, and the other misrepresentations are like those— Do you have a copy of Sheen with you? Yes, I do. What should I be reading for Sheen that makes the point you're trying to make? The section—it's a long opinion. I've got the whole opinion right here. I'm not sure which page, but it's the section where the California Supreme Court does discuss. Well, there's a heading that says—it's on page—I guess I have the Cal Reporter version, I think. It's page 924. And there's a heading that says, the economic loss rule bars plaintiff's negligence claim. And after that, there's a discussion of the economic loss rule, and there's a discussion of the contract context, and it's specifically about a negligence claim, which is the claim that you're trying to assert. So I look at that, and I say, okay, the courts acknowledge there are other claims that might persist, but negligence doesn't appear to be one of them. And that's what you have. But I do not believe, nor did Justices Lew and Jenkins, who concurred— Yeah, but they didn't—they joined— They joined. —what they're saying. But no, no, no, no, no. And the majority did not say no, no, no, no, no. The majority said the economic loss rule bars plaintiff's negligence claim. The plaintiff in that—I don't believe the rationale of why the economic loss rule bars negligence claims leads to the correct interpretation. I don't believe that Sheen, rightly interpreted, said there can never be a negligence claim any longer under any possible fact circumstances because of the economic loss rule. Because you have to analyze the rationale for why the economic loss rule applies and why it doesn't. And the touchstone is intentional misconduct. You can't lie and cheat, as we believe the facts show, but that's for the jury, if this case ever went back. You can't do that and still benefit from the economic loss rule to prevent a negligence claim. It's a sort of a mixture of intentional misconduct, which Mr. Hahn and his wife and their trust couldn't bring as a separate claim because they didn't actually have a fraud claim, but they had the equivalent of a fraud claim that created liability and negligence. And the economic loss rule, it's broad, but it's not broad enough to rule out every possible negligence claim where there's that much intentional misconduct. Your case was decided on summary judgment, if I remember correctly. That's correct. And there was no claim for negligent misrepresentation or promissory stop. That's correct because we couldn't, in good faith, craft such a claim because the elements require, as your honors know, the reliance and the other issues. The problem here was, for over three years, SPS, you saw in our brief, went on and on, a litany of misconduct. Nine times the Hahn's submitted the same thing, that they lied about getting the appraisal, they lied that they had appraisals. It just went on and on for a property where the debt was $2.6 million and the property by various appraisals was at least worth $6 million and eventually sold for $5.5 million. The whole nightmare is almost inconceivable that it could have happened, yet it did. But we couldn't find a way, your honors, to craft a specific tort claim for negligent misrepresentation, yet the litany of misrepresentations was enormous. So is there no remedy? Well, what's the loss? The loss is they were forced under foreclosure. Foreclosure proceedings were started. They filed bankruptcy... Well, there was no foreclosure sales schedule at the time of sale. They were certainly under pressure. I acknowledge that. That's not correct. They filed a notice of foreclosure, which is what... And had been withdrawn, according to the facts that I reviewed. No, it wasn't. What happened was that it was stopped... Can you reference something in the record? It's in the record. I can't pull it up with my fingertips. I could send you... You come back, you have a chance to point it out. Let me finish my answer, please. I can certainly find the record. But the bankruptcy was filed on the morning of the foreclosure sale, which was March the 13th of 2017, I think. That was the only thing that stopped the foreclosure sale was a bankruptcy. That's in the record. Well, but there was no foreclosure sale there. I mean, I'm trying to figure out what damage is slow from the alleged negligent misrepresentation, which I got to say, I'm not persuaded distinguishes Sheen, but I don't get to the result you're trying to advocate for. What was the negligent misrepresentation that led to the loss? It was not so much a misrepresentation. Well, see, here we go. Because you couldn't bring a fraud claim, but you want to kind of bring a fraud claim, except you can't connect the... I mean, the dots don't connect. Let me try this one. One of the cases you cite and discuss from the California Court of Appeal that you argued survives Sheen is, I don't know whether it's Weimer or Weimer. That's one. But what did the Court of Appeal do when Weimer went back to it? There is a Weimer too. Yes, there is. I've read it. Okay. And it doesn't seem to think that Sheen didn't speak to its situation. It plainly held to the contrary. I've read it, and I forthrightly disagree. I think the Court of Appeal could and should have... But when we look at California law, I mean, what are we supposed to look at? Not maybe what the lawyer thinks, but what the court says. Well, we have more here than Weimer. We have especially the intentional, the lying basically about the appraisals is present in no other case. As in addition to the endless litany of misconduct, to go back to what was the damage, the duty was to handle, the negligence was mishandling the loan mortgage application. But there's no duty in the contract. But there is a duty because the economic loss rule doesn't protect a mortgage servicer from doing this type of intentional misrepresentation, lying about the appraisal, lying about handling the application. The result, you ask, what was the result? How do you tie it together? By failing to do their duty, which we say they did have, to properly process it, they instead foreclosed. The duty was not created in the contract, but okay, I'll follow along with you. They filed a foreclosure. I can find that for you if it matters, if it really matters. And the foreclosure was stopped only by a bankruptcy filing. That's in the record. Well, and they undid some things they had done, were forced to undo some of the things they did. But it's my understanding, and this is the comment I made, and I'll be curious if it may well be wrong, complicated facts here or such. But my understanding is the time they actually sold, there was not a foreclosure sale scheduled. There was not one scheduled because it was stayed by the automatic federal bankruptcy state. So when they sold it... They sold it under distress, under a bankruptcy distress. They were only being saved from foreclosure by bankruptcy. And instead of letting the process go through and maybe lose the property, they sold it. It happens all the time. I deal in that area. As part of the bankruptcy process, they arranged the sale for a million dollars less than the property was valued by several appraisals. They lost a million dollars because SPS never should have foreclosed. Right. But the district court says that your client knew at the time of the sale that there was no scheduled foreclosure sale. So is that... There was no schedule, Your Honor. There was no scheduled foreclosure sale because the foreclosure had been stayed by the bankruptcy filer. Oh, that's sort of what I had said before. There's no scheduled foreclosure sale. And you said I was wrong, but it appears I was right. There was no scheduled foreclosure sale. No, no. Let me clarify. There was a scheduled foreclosure sale for, I believe, the dates stick in my mind, Monday, March the 13th. Well, there had been a scheduled foreclosure sale. Of course. At the time they sold it, there was no scheduled foreclosure sale. That's what I said. You told me I was wrong, but it turns out that maybe I wasn't so wrong. No, I misunderstood. I thought you were talking about before at any time. There was a... There was a... Please let me clarify. There was a foreclosure sale. No, I mean... There was no foreclosure sale pending when they sold the property because bankruptcy had stayed all foreclosures. But the bankruptcy was forced by the misconduct of SPS. In noticing a foreclosure sale, which they shouldn't have done if they had complied with their duty, which duty still survives the economic loss rule. That's the chain of the argument. Okay. You want to save the balance of your time for rebuttal? Yes, thank you. Okay. Thank you. Thank you. Good morning, your honors. May it please the court. I'm Doug Strauss from the Buckhalter Wild Farm. I represent the appellee Select Portfolio Servicing, Inc. Start with the question that Judge Clifton asked, which is... Although I don't think it's the dispositive question because I think there's no duty here sounding in negligence, which is the only surviving claim. But Judge Clifton, you asked, what is the damage? And the appellant represented to you that there's a million dollar loss here. As you pointed out, this is on appeal from a summary judgment order from the district court. And the summary judgment order from the district court expressly found that there was no evidence in the record to support any finding of lost equity from the sale of the property. The property was sold for $5.6 million. And the district court's decision said that plaintiffs failed to provide any evidence to support that assertion that they lost equity in the property. I'm reading from page 21 of the summary judgment order. Instead, such damages are too speculative to survive summary judgment. In the following paragraph, however, to survive summary judgment, plaintiffs must set forth evidence to support their claims. Attorney argument suggesting that plaintiffs will submit expert testimony at trial as to the existence of damages does not suffice. So there was no economic loss from the alleged lying by my client. Because we're here in a summary judgment context, I'm not going to argue about whether the dialogue back and forth between a select portfolio servicing and the very sophisticated plaintiffs involved lying or involved the plaintiffs who had $3 million in equity in their property and didn't want to pay their loan dodging appraisers for a period of years. Could I ask you about Sheen? Yes. Do you think that it forecloses all negligence claims? Yes, Your Honor, I believe Sheen... What do you think the court meant when they said without more? They meant that if you can make a claim for negligent misrepresentation or fraud or for a violation of the California statutory scheme, the Homeowners Bill of Rights, or the federal statutory and regulatory scheme, RESPA, which govern in great detail what loan servicers and lenders must do when they're handling loan modification applications. If you cannot make a claim under one of those areas, that you cannot make a straight negligence claim. What if... Well, here they say that there was between... Like I said, I guess his argument is that there was fraudulent misrepresentations between Wells Fargo and... Or not Wells Fargo, whatever, Select Portfolio. Select Portfolio Servicing, right. I mean, the argument essentially is that my client told lies that the appellants didn't believe the lies. So therefore, there's no claim for fraud or negligent misrepresentation because the lies had no consequences because they were disbelieved. But that adds up to negligence. I was trying to think, there's no case that says that. You can't find anything in Sheen that suggests that. There are dozens of cases that have been decided since Sheen. I have read, or one of my colleagues has read all of them. None of them suggest anything like a carve-out for intentional negligence, which I think is what we're hearing. And negligence is not a lesser included offense of an intentional tort. If my clients had committed all of the elements for an intentional tort, or if they had breached the Homeowner's Bill of Rights, or if they had violated RESPA, then the appellants would have a claim. But they don't. The only claim that's here is a claim for negligence. And there is nothing in Sheen that says that if you lie and the borrower doesn't believe the lie, that that somehow creates a claim for negligence. None of the elements of a negligence claim are present under those circumstances. It's just an effort to essentially inflame the court by suggesting lying, which obviously I don't condone on the part of anybody in any commercial or other transaction. But somehow lying must have a remedy. If lying by itself was all that was required for a remedy, then we wouldn't have a reliance element in fraud and negligent misrepresentation claims. So there's no there there. There's simply I can't find a single case that says that an intentionally false statement creates a negligence duty that is breached in a loan modification transaction. And I've read Sheen many times, and Sheen doesn't even imply that. Could you just refresh my recollection? But what were the critical facts in Sheen? The critical facts in Sheen, sticking just to the facts of that case, were that the borrowers claimed that they had submitted a loan modification application on their second and third mortgages and that those loan modification applications had been ignored by the lender. However, the borrowers also claimed, and this is in the opinion, that somebody from the lender called them up and promised them that there wouldn't be any foreclosure on their property. And then five years later, it turned out that the loan had been, the second or the third, I don't remember whether it was one or both, had been sold to some other lender and that lender foreclosed on the property. So obviously one of the facts, although it's not discussed in the Sheen opinion because it's not material to the opinion, one of the facts in Sheen is that the lender allegedly lied to the borrower, just like here. But the holding in Sheen addresses a situation where the key allegation is that the lender never actually responded to the loan modification application. Here, there's a significant difference, correct? Well, the lender did respond to the loan modification application. Sheen addresses that in footnote four of the opinion, where it says, and this is a very gross paraphrase, that it does not matter. And if there had been a processing of the loan modification application, we would reach the same result. And all of the logic that Judge Clifton described with respect to the economic loss rule and the contractual nature of the relationship applies once the loan modification process starts, just as it does when the loan modification isn't evaluated at all. As Judge Clifton pointed out, the Weimer case, which was the only one of the four cases that are discussed that are disapproved by the Sheen case, the Weimer case was actually still pending. And the Supreme Court sent the Weimer case back to the Court of Appeal. And the Court of Appeal, specifically in their opinion, talks about the argument being made here by appellants, which is it's factually distinct from the facts on which Sheen was decided. And the Weimer Court of Appeal says unequivocally that the factual distinctions do not matter. The Sheen case bars negligent claims in the loan modification context. And there is no case that says anything different. Could you envision a situation where the bank, where the select portfolio or some other servicer approved a loan modification, and then during the process of implementing that engaged in negligent conduct? Would they then have a negligence claim? Would there then be a duty? I think they would have a contractual duty. If there was an approved loan modification, then the parties would have entered into a modification of the contract. And if SPS, sorry. Any loan. Any loan servicer. If any loan servicer then failed to adhere to the terms of the loan modification, there would be a breach of contract. If they lied about it or made false representations that caused injury to the borrower, then there might also be a claim for negligent misrepresentation and or fraud. Again, I'm not endorsing lying. I'm certainly not endorsing doing anything deliberate to injure a borrower. But that's not what occurred here. Even if we assume that there was lying, the admission both in the brief and in the argument is that there wasn't any injury that resulted from the lying because they didn't believe the lying. I guess I only raise that hypothetical because as I read Sheen, when they said without more, I didn't think they were just limiting it to negligent misrepresentation claims or promissory estoppel or any other kind of statutory claim. I didn't think they were slamming the door completely. Well, obviously, we're all trying to guess what the California Supreme Court meant. All I can tell you is that there are a couple dozen decisions, none of them published, so I can't cite them in California courts, but I can in the Ninth Circuit. And all of them say Sheen says there is no claim for negligence in a loan modification context. And I don't want to repeat myself unduly, but that does not leave an aggrieved borrower without remedies. This is a heavily regulated and legislated area. It is not like lenders can act willy-nilly and not treat loan modification applications with respect. There are both federal and California schemes that apply here. They actually didn't apply in Sheen because Sheen was the second and third deed of trust, but they apply here. And there's no allegation that we didn't adhere to any of the statutory criteria. So this is, you know... Has there been a subsequent decision or opinion other than Weimer, but the four Court of Appeals decisions, Court of Appeals, singular, sorry, decisions that had been cited previously and were discussed in Sheen? We now know that... I'm calling it Weimer. I apologize if I'm getting that wrong. There's a Weimer 2. Has there been a subsequent decision reported or unreported in any of the other three cases? There's no equivalent of Rosetta Alvarez or Daniels 2. There are a couple of decisions that have discussed those four cases and said that they don't have... This is my paraphrase, but says that the negligence rule is absolute and they don't have continuing vitality. Two of those decisions are Perez v. Bank of America, which is a Southern District of California opinion at 2022 Westlaw 3718835. And then Resendez v. Bayview Loan Servicing. My notes are incomplete. I apologize. But that case also is at 2022 Westlaw 872870. Both of those cases discuss at least three out of the four. And which court is that second one? You know, that's why I apologize. My notes don't tell me and I don't have a good enough memory. Well, my particular interest... Maybe I should put the question this way. Other than those three line of cases, and there doesn't seem to be a follow-up, have the California District Courts of Appeals rendered decisions other than Weimer too that speak to this problem? They have. They have not specifically discussed the four cases, which I thought was the question. No, I've changed the question. Okay. Because we customarily, on matters of state law, try to turn to state courts. And the state Supreme Court is binding. The others are persuasive. But the California Court of Appeals is pretty persuasive. So... So Damondon v. Three Olives, Inc. at 2022 Westlaw 16757165 is a case where somebody attempted to argue that Bank of America and Mortgage Electronic Registration Servicing had went beyond undertaking a review for a loan modification, and that created a duty, and the Court of Appeal was having none of it. Quoting Sheen, we have never done what plaintiff now asks us to do, impose a tort duty on a contracting party to avoid negligently causing monetary harm to another party to that contract. There's another case, and then my yellow light is up, so I've got a couple minutes left. Parabea. I may be mangling that as badly as you mangled... A lot of that going along. Parabea v. Wells Fargo Bank 2022 Westlaw 3272606 says that we won't even allow a negligent infliction of emotional distress claim under Sheen. So there are both California and federal cases that are considering the landscape of what it means to try and assert a claim for negligence in light of Sheen in a loan mortgage modification context, and there are no cases that have carved out, as far as I know, no cases that have carved out any loophole that allows for a surviving negligence claim. There are cases, including Weimer too, that say you can make a claim for negligent misrepresentation or fraud, and you certainly can make statutory claims, but of course the only claim here that is up for review with this court is the grant of summary judgment on the negligence claim. And I have 45 seconds left to answer any questions you might have. I have none. Thank you. Thank you very much, counsel. You have two minutes for rebuttal, counsel. Sufficient evidence was submitted below of the loss of $1 million that Judge Corley was mistaken in her saying that we had to submit an expert witness to support a prima facie case that a property appraised at $6.5 million, which we have evidence of and was submitted to the court, sold for $1 million less. That was sufficient to at least avoid summary judgment on the issue of amount of damages. Counsel, if you could maybe just spend a minute and address footnote four in Sheen where the court says, and I am reading it, that even if Wells Fargo did accept the applications for consideration, it's unclear why mere acceptance of the applications would give rise to a tort duty. So, I mean, what's your response to that? Where does that leave that? Mere acceptance of the application does not give rise to a tort duty. We say here there's far more than mere acceptance. There was not only confirmation that there was a complete application, but to pick up on something Mr. Strauss said, there was also a commitment. Having not only accepted and processed the application, we will make available to you any loan modification alternatives that you should qualify for. That was a fresh new promise that took this out of the original contract and therefore created a fresh field for duty. Duty, to go back to what Your Honor said, without more is not reasonably limited to those other independent torts. At least that's how I read Sheen itself, which quotes, and I quote it on page three and four of the reply brief, that the conduct which could still give rise to liability even within the economic loss rule of the Sheen case is conduct that is intentional and intended to harm. And quoting the early case, is could be fraud or misrepresentation or other intentional conduct clearly outside of the torts of fraud and intentional misconduct that, to quote the Menzies, early V. Menzies, tort remedies should be inferred only when the conduct in question is so clear the deviation from socially useful business practices, counsels that there should be a finding of liability. Mr. Strauss doesn't endorse lying, nobody endorses it, but SPS should not be allowed to lie as they did to the Hans about these appraisals, which is socially very bad conduct and not face negligence liability. Okay, thank you, counsel. We appreciate the arguments this morning. The matter is submitted at this time. And at this time, we're going to take a 10 minute break.
judges: PAEZ, CLIFTON, THOMAS